# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

Sorptive Minerals Institute,

      Petitioner

    *v.*

Mine Safety and Health
Administration; Secretary of
Labor, United States Department
of Labor,

      Respondents

-----

National Stone, Sand & Gravel
Association, et al.,

      Petitioner

    *v.*

Mine Safety and Health
Administration, et al.

      Respondents

No. 24-1889

No. 24-2661

Sorptive Minerals Institute and
Blue Mountain Production
Company,

        Petitioners

    *v.*

Mine Safety & Health
Administration, et al.

    Respondents

No. 24-2663

### Secretary's Response to United Mine Workers' and United Steel Workers' Motion for Leave to Intervene

This case is a challenge to the Mine Safety and Health Administration ("MSHA") final rule entitled "Lowering Miners' Exposure to Respirable Crystalline Silica and Improving Respiratory Protection," 89 Fed. Reg. 28,218 (Apr. 18, 2024) ("Silica Rule"). The Silica Rule became effective on June 17, 2024. The compliance date for the coal industry was April 14, 2025. The compliance date for the metal/nonmetal industry is next year, April 8, 2026.

The first challenge to the Silica Rule was filed in this Court by Petitioner Sorptive Minerals Institute on April 29, 2024. Another challenge was filed in

Appellate Case: 24-2663    Page: 2    Date Filed: 04/24/2025 Entry ID: 5510175

the Fifth Circuit. After extensive motion practice, the cases were consolidated in this Court on August 16, 2024. The parties have briefed this case, and the only remaining briefs are Petitioners' reply briefs.

On April 4, 2025, the Court granted Petitioners' emergency motion for a temporary administrative stay of the Silica Rule. Order, ECF No. 5503639 (8th Cir. Apr. 4, 2025); Petitioners' Emergency Motion for Administrative Stay and Expedited Briefing, ECF No. 5502801 (8th Cir. Apr. 2, 2025). On April 11, 2025, the Court granted Petitioners' motion to stay the compliance deadlines until the Court completes a substantive review of the petition for review. Order, ECF No. 5505588 (8th Cir. Apr. 11, 2025); Petitioners' Motion for Stay Pending Judicial Review, ECF No. 5502800 (8th Cir. Apr. 2, 2025). Also on April 11, 2025, the Court granted Petitioners' motion to hold the appeals in abeyance, and directed the parties to file a joint status report by June 10, 2025, regarding the developments in the cases. Order, ECF No. 5505588 (8th Cir. Apr. 11, 2025); Petitioners' Motion for Four-Month Abeyance of Litigation, ECF No. 5505429 (8th Cir. Apr. 11, 2025).

On April 14, 2025, the United Mine Workers of America and the United Steel Workers ("Unions") filed a motion for leave to intervene ("Unions'

Motion to Intervene"). Joint Motion for Leave to Intervene, ECF No. 5506285 (8th Cir. Apr. 14, 2025).

The Unions' Motion to Intervene should be denied because the motion is untimely, and the Unions' purported reason for delaying in seeking intervention is baseless because the Unions have not rebutted the presumption that the Secretary is adequately representing the public interest in this case. Finally, the Unions' Motion to Intervene should be denied because they have not established Article III standing.

## I.    The Unions' Motion to Intervene is Untimely

The Unions seek to intervene as a matter of right under Federal Rule of Appellate Procedure 15(d) ("FRAP 15(d)") and Federal Rule of Civil Procedure 24(a)(2) ("FRCP 24(a)(2)"). ECF 5506285 at 12. The Unions also seek permissive intervention pursuant to FRCP 24(b)(2). "The issue of timeliness of a motion to intervene is a threshold issue." *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010). Under either theory of intervention—as of right or permissive—the Unions are untimely and do not meet this threshold issue.

## A. The Unions' Motion to Intervene As a Matter of Right is Untimely Under FRAP 15(d) and FRCP 24(a)(2)

FRAP 15(d) provides that a motion to intervene "must be filed within 30 days after the petition for review is filed…" FRAP 15(d). In the Seventh Circuit, there is "no authority to create an exception to [the] clearly worded jurisdictional rule" requiring motions to intervene to be filed "within 30 days after the filing of the petition for review." *Miljkovic v. Ashcroft*, 366 F.3d 580, 583 (7th Cir. 2004). [1]

The initial lawsuit challenging the Silica Rule in this case was filed in this Court on April 29, 2024. The Unions filed their motion to intervene nearly one year later, on April 14, 2025. On this basis alone, the Unions' motion to intervene as a matter of right is untimely and should be dismissed. Indeed, the Unions do not even acknowledge the applicable 30-day filing deadline, let alone provide grounds for excusing the Unions' extreme tardiness.

Because FRAP 15(d) provides the requisite timeframe for filing a motion to intervene in an agency review proceeding, the Unions err in asserting that

---

[1] The Secretary notes, however, that at least one other circuit has held that the 30-day deadline is not jurisdictional. *Int'l Union of Operating Eng'rs, Loc. 18 v. NLRB*, 837 F.3d 593, 596 (6th Cir. 2016) ("this thirty-day filing deadline is a claim-processing rule that the courts of appeals can excuse").

Appellate Case: 24-2663    Page: 5    Date Filed: 04/24/2025 Entry ID: 5510175

FRCP 24(a)(2)'s timeliness standard, which applies to motions to intervene in district court proceedings, is relevant. Nonetheless, even if FRCP 24(a)(2)'s timeliness standard were applicable, the Unions' motion to intervene, made one year after the initial Silica Rule challenge and when briefing on the merits is nearly complete, would not be "timely."

When determining timeliness under FRCP 24(a)(2), courts consider the following factors: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties. *Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2011) (citing *Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011)). When considering all of these factors in this case, the Unions' motion to intervene is untimely under the FRCP 24(a)(2) standard.

### 1. The Extent the Litigation Has Progressed at the Time of the Motion to Intervene

Intervention in the late stages of litigation is disfavored by this Court. *Craig v. Simon*, 980 F.3d 614, 618 n.3 (8th Cir. 2020) (denying as untimely a

6

motion to intervene on appeal because it was "filed after expedited briefing was completed" and noting Fifth Circuit precedent stating that "intervention on appeal should be allowed only 'in an exceptional case for imperative reasons'") (quoting *Richardson v. Flores*, 979 F.3d 1102, 1103–06 (5th Cir. Nov. 12, 2020)). This Court has denied a motion to intervene filed 12 days after commencement of an action where a hearing already had been held and a temporary restraining order issued. *Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985).

In this case, the first challenge to the Silica Rule was filed in this Court on April 29, 2024. Petition for Review by Sorptive Minerals Institute, ECF No. 5388294 (8th Cir. Apr. 29, 2024). The second challenge to the Silica Rule was filed in the Fifth Circuit on June 14, 2024. Petition for Review by National Stone Sand and Gravel Association, et. al., ECF No. 1-2, No. 24-60306 (5th Cir. June 14, 2024). After considerable motion practice, these challenges were consolidated in this Court on August 16, 2024. Order, ECF No. 5425428 (8th Cir. Aug. 16, 2024).

After consolidation in this Court, the existing parties filed their primary briefs. Opening Brief of Petitioners Sorptive Minerals Institute and Blue Mountain Production Company, ECF No. 5459828 (8th Cir. Nov. 22, 2024);

7

Proof Opening Brief for Petitioners National Stone, Sand and Gravel Association, et. al., ECF No. 5459824 (8th Cir. Nov. 22, 2024); Proof Response Brief of Respondent Secretary of Labor, ECF No. 5476148 (8th Cir. Jan. 17, 2025).

In addition to these briefs, four *amicus curiae* briefs were filed, including the United Mine Workers of America International Union, as well as the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union. Amici Curiae Brief of United Mine Workers of America International Union; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFLCIO/CLC; and the National Black Lung Association, ECF No. 5487074 (8th Cir. Feb. 19, 2025).

This case is nearing its end. The case is fully briefed with the exception of the Petitioners' reply briefs. Were it not for Petitioners' Emergency Motion for Stay, the Petitioners would have filed their reply brief as scheduled on April 21, 2025, and the Court might very well have scheduled oral argument already. And yet, at the eleventh hour of this litigation, the Unions seek to intervene after the parties have filed their primary briefs, after four *amicus curiae* briefs have been filed (including an amicus brief by the movant

8

Unions), and after the Court issued a temporary administrative stay. This is too late, and this factor militates against granting the Unions intervenor status.

### 2. The Prospective Intervenor's Knowledge of the Litigation

If a party seeks to intervene in a case but knew of the case well before seeking to intervene, that knowledge militates against allowing the intervention. See *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995) (district court's denial of motion to intervene upheld when Intervenor monitored suit for two years and moved to join one month before trial and after a settlement was reached).

The Unions concede that they have been aware of this case "since its inception" nearly a year ago. Unions' Motion to Intervene at 14. And yet, the Unions did not intervene until April 14, 2025. See *supra* pp. 3-4. The Unions knew about the case have had ample opportunity to intervene in the last twelve months, but they chose not to. Under the circumstances, this factor militates against granting the Unions intervenor status.

### 3. The Reason for the Delay in Seeking Intervention

The Unions' proffered reason for not seeking to intervene earlier is that it only recently became apparent, according to the Unions, that the Secretary

9

would not vigorously and fully defend the Silica Rule. The premise underlying that assertion is flawed and baseless. FRCP 24(a)(2) provides for a party to intervene where it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, *unless existing parties adequately represent that interest*." FRCP 24(a)(2) (emphasis added). In matters concerning the public interest, the government is presumed to represent the interests of a movant. *Chiglo v. City of Preston*, 104 F.3d 185, 187-88 (8th Cir. 1997).

A party seeking to intervene in litigation under FRCP 24(a) must show that none of the existing parties adequately represents its interests. *North Dakota ex rel. Stenehjem v. U.S.*, 787 F.3d 918, 921 (8th Cir. 2015). This is usually a minimal burden, but

> 'when one of the parties is an arm or agency of the government, and the case concerns a matter of sovereign interest, the bar is raised, because in such cases the government is presumed to represent the interests of all its citizens.'

*Ibid.* (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)). "The government represents the interests of a movant 'to the extent his interests coincide with the public interest.'" *Chiglo*, 104 F.3d at 187-88. This presumption of adequate representation by the government can be overcome

10

only by "a strong showing of inadequate representation." *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004). The presumption may be rebutted by showing that the government has "'committed misfeasance or nonfeasance in protecting the public.'" *Stenehjem*, 787 F.3d at 922 (quoting *Chiglo*, 104 F.3d at 188). However, "'[a]bsent this sort of clear dereliction of duty … the proposed intervenor cannot rebut the presumption of representation by merely disagreeing with the litigation strategy or objectives of the party representing him.'" *Ibid.* (quoting *Chiglo*, 104 F.3d at 188).

Here, the Unions' proffered reason for their delay in moving to intervene at this advanced stage of the litigation is their belief that the Secretary's "enforcement pause," on April 8, 2025, of the coal compliance date indicates that their interests were "not adequately represented" by the Secretary. Unions' Motion to Intervene at 15. The Unions' belief is unfounded, and they read far too much into the present procedural posture of the case and far too much into the Secretary's temporary, four-month, limited enforcement pause of the coal compliance date.

On the one hand, the Unions lament that the Secretary's filing indicated she "takes no position" on Petitioners motion for stay of the rule, Unions'

11

Motion to Intervene at 3 (quoting from Secretary's response to Petitioners' Motion for Stay), yet ignore that only a week earlier, the Court granted a temporary administrative stay without awaiting the Secretary's response to Petitioners' Emergency Motion for Stay. Parties, including the Secretary, take litigating positions for any number of reasons, which are not inherently nefarious reasons. Contrary to the Unions' assertion, the Secretary did not have a "sudden shift" in litigation positions, she was merely responding to events as they unfolded. *Id.*

Similarly, the Unions latch on to the Secretary's short, four-month enforcement pause in the coal compliance date and the fact that "there have been significant personnel changes at the Department of Labor, and indeed other federal agencies [such as the National Institute for Occupational Safety and Health]" and "MSHA finds itself without permanent senior leadership." Unions' Motion to Intervene at 2. From this, the Unions extrapolate a purely speculative parade of horribles: the "Agency … is losing the stomach for the fight to vindicate its own rule," *id.* at 3; doubts "whether the Agency will continue to support, rescind, or revise the Silica Rule," *id.* at 2; and assumes that MSHA will cease defending the Silica Rule. *id.* at 3 ("Given the uncertainty of MSHA's continued defense of the Silica Rule…").

The Unions' perceived concerns, however genuine, are not based in any actual evidence. For example, the Unions ignore the fact that the Secretary has not withdrawn her brief, has not changed her substantive legal position on the validity of the Silica Rule, or otherwise indicated that she would no longer be defending the rule. On the contrary, the Secretary's time-limited enforcement pause acknowledges that unforeseen restructuring of other governmental agencies, including the National Institute of Occupational Safety and Health, may impact the compliance date for coal mines. This is good government, not a situation where the "need to seek intervention" arose when a government party "ceased defending the … law." *Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 280 (2022). This is not a "strong showing of inadequate representation," "misfeasance or nonfeasance in protecting the public," or "'clear dereliction of duty'" required to overcome the presumption of adequate representation by the government. *Little Rock Sch. Dist.*, 378 F.3d at 780; *Stenehjem*, 787 F.3d at 922 (citation omitted); *Chiglo*, 104 F.3d at 188.

The Unions "'merely disagree[] with the litigation strategy or objectives'" of the Secretary. *Stenehjem*, 787 F.3d at 922 (quoting *Chiglo*, 104 F.3d at 188). The Unions have not met the high bar to overcome the

13

presumption of adequate representation, and therefore their stated reasons for delaying in bringing this request for intervention does not justify the request's untimeliness.

### 4. Whether the Delay in Seeking Intervention Will Prejudice the Existing Parties

The Unions "seek to intervene for purposes of participating in oral argument and *any additional briefing that may be directed by the Court*." Unions' Motion to Intervene at 14 (emphasis added). In *Minnesota Milk Producers*, 153 F.3d at 646, this Court denied a motion to intervene noting that a movant's delayed entry into the case would prejudice another party who would be forced to respond to the movant's arguments.

Permitting the Unions to intervene at this late stage presents the opportunity for the Unions to seek leave to file additional briefs, which would require additional motion practice by all parties and consume even more of the Court's and parties' resources. At this late stage in the litigation, the issues are well-defined and thoroughly developed. Allowing the Unions to intervene may very well reopen these issues and potentially inject additional issues—and delay—into the case. Unnecessarily revisiting the already

developed issues in the case, opening new issues, and injecting further delay in the case would prejudice both parties who seek finality in this matter.

In sum, the Unions have known about this litigation for a year, have failed to rebut the presumption that the Secretary is adequately protecting the public interest, and seek to intervene at the eleventh hour of the litigation when the issues are fully mature. Intervention at this stage will prejudice the Secretary, and the Unions' Motion to Intervene should be denied.

### B. The Unions' Motion to Intervene on a Permissive Basis Under FRCP 24(b)(1)(B) is Also Untimely

When faced with a request to intervene on a permissive basis, the request must also be "timely." FRCP 24(b)(1)(B). When determining timeliness on a permissive basis, courts consider the same factors as motions for intervention as of right: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties. *Planned Parenthood of the Heartland,* 664 F.3d at 718. For the same reasons discussed above, the Unions' motion is untimely, and the Court should deny permissive intervention.

15

## II. The Unions Have Not Demonstrated Article III Standing Because They Cannot Establish a Legally Cognizable Injury

The Unions argue that they have Article III standing because of the *potential* risk of "[l]oss of the protections of the Silica Rule." Unions' Motion to Intervene at 5. But, at this point, the potential "loss" of the Silica Rule *itself* is no more in jeopardy than it was when the first challenge was filed in April 2024, when the Secretary filed her brief in January 2025, or when the Unions filed their amicus brief in February 2025. The relevant issues right now are the *compliance dates* of the Silica Rule—April 14, 2025 for the coal industry and April 8, 2026 for the metal-nonmetal industry. As such, the Unions can neither demonstrate standing in their own right nor as representatives of their members.

### A. The Unions Cannot Established Standing in Their Own Right

Under Article III, federal courts "do not exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Instead, a party must establish an injury that is both "legally and judicially cognizable." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). "This requires, among other things, that the [party] have suffered 'an invasion of a legally protected interest which is … concrete and particularized,' and that the dispute is 'traditionally thought to be capable of

16

resolution through the judicial process.'" *Ibid.* (citations omitted). "Article III's standing requirement is a restraint on the 'judicial power' as unyielding as that placed on Congress by, for example, the First Amendment." *Mausolf*, 85 F.3d at 1300.

To establish standing, "a [party] must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by [the other party], and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA* v. *Alliance for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "When the allegations in the underlying controversy are relevant—for instance when a lawsuit ultimately targets the prospective intervenor's interests or rights—the court should focus its attention on the pleadings because 'standing is to be determined as of the commencement of suit.'" *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 973 (8th Cir. 2014) (citation omitted). "Viewing the complaint holistically, the court should assume the plaintiff will receive the relief it seeks and, from that assumption, assess the sufficiency of the prospective intervenor's motion." *Ibid.* Viewing this case holistically and in the context of its present procedural posture and the Secretary's enforcement posture, the relevant underlying allegations are not the validity of the Silica Rule itself,

17

but the compliance dates. When viewed in this manner, the Unions cannot establish these elements of standing.

### 1. There is No Injury in Fact That is Concrete and Particularized

The Unions seek to intervene because, in their view, the "Agency is losing the stomach for the fight to vindicate its own rule." Unions' Motion to Intervene at 3. The Unions doubt "whether the Agency will continue to support, rescind, or revise the Silica Rule," *id*. at 2, and assume that MSHA will cease defending the Silica Rule. *id*. at 3 ("Given the uncertainty of MSHA's continued defense of the Silica Rule…"). Such doubts, however genuine, are speculative, of recent origin, and not sufficiently concrete and particularized to meet this element of standing.

The Unions read far too much into the recent motion practice in this case. On the one hand, the Unions lament that the Secretary "t[ook] no position" in Petitioners motion for stay of the rule, Unions' Motion to Intervene at 3, yet ignore that the Court granted, a week earlier, a temporary administrative stay without awaiting the Secretary's response. Parties, including the Secretary, take litigating positions for any number of reasons, which are not inherently nefarious reasons. Contrary to the Unions' assertion, the Secretary did not have a "sudden shift" in litigation positions. *Ibid*.

18

The Unions also read far too much into the Secretary's "enforcement pause" of the coal compliance date. The Unions lament a short, four-month enforcement pause in the coal compliance date *only*, and yet concede that "there have been significant personnel changes at the Department of Labor" and "MSHA finds itself without permanent senior leadership." Unions' Motion to Intervene at 2.

The Unions' purported injuries are speculative, of recent origin, and not sufficiently concrete and particularized to meet this element of standing.

### 2. There is No Causation Traceable to the Secretary

In support of their motion, the Unions offer two affidavits, one from a coal miner and one from a metal-nonmetal miner. Because the compliance date for metal-nonmetal mines does not come into effect for another year, any harm to the United Steel Workers, whose constituency is metal-nonmetal miners, is speculative and not fairly traceable to the Secretary. With respect to the coal compliance date, the Secretary's enforcement pause explains that external circumstances, including the impact of NIOSH reorganization, necessitated a short, four-month pause of the compliance date for coal mines. Any harm to the United Mine Workers created by these

19

external circumstances is not fairly traceable to the Secretary, either. Accordingly, the Unions fail to meet this element of standing.

### 3. The Unions' Requested Relief Will Not Redress the Alleged Injury

The Unions seek only to "intervene in this litigation for the purpose of participating in oral argument and any supplemental briefing that the Court may order." Unions' Motion to Intervene at 22. This participation will not redress the alleged injury. The Unions, for example, concede that the Secretary filed a "compelling and thoughtful brief in support of the validity of the Silica Rule." *Id.* at 14. Indeed, the Unions have filed their own compelling and thoughtful amicus brief. There is no evidence to suggest that any further briefing—from the Secretary or the Unions—that would be necessary in this case. Moreover, the Unions cite to no evidence that the Secretary will do anything other than conduct a persuasive oral argument. Accordingly, the Unions cannot meet this element of standing.

In sum, the Unions have not demonstrated that they have standing in their own right because there is no concrete and particularized injury that is traceable to the Secretary, and, in any event, their requested relief will not redress any alleged injury.

## B. The Unions Cannot Establish Associational Standing

An organization has standing to assert the rights of its members if: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Worth v. Jacobson*, 108 F.4th 677, 685 (8th Cir. 2024). A union's general interest in enforcement of a standard is insufficient to establish associational standing. See *United Mine Workers of Am., Int'l Union v. Zatezalo and the Mine Safety and Health Administration*, No. 5:18-CV-01478, 2019 WL 5212953 (S.D.W. Va. Oct. 16, 2019).

In *UMWA v. Zatezalo*, the UMWA sued MSHA when the agency removed a mine from a pattern of violations notice. *UMWA*, 2019 WL 5212953, *1. The UMWA asserted standing based on its allegation that MSHA's termination of a pattern of violations notice at a particular mine undermines the deterrent effect of the overall pattern of violation standard, thereby putting UMWA members and other miners at risk through decreased safety in the nation's mines. *Id.* at *3. The District Court concluded that such a generalized assertion of harm due to an alleged degradation of the pattern of violation standard "falls short of satisfying the standing requirements for

21

UMWA to establish standing in its own right." *Ibid.* The court went on to hold that "UMWA's individual members are no closer to the alleged harm than the UMWA is as an organization," and therefore the UMWA also lacked associational standing. *Ibid.*

Here, the gravamen of the Unions' argument is essentially a generalized interest in enforcement of the Silica Rule. "The Unions seek leave to intervene…based on a good-faith interest in protecting the Silica Rule for the benefit of their members and the nation's miners generally." Unions' Motion to Intervene at 3. The Unions believe that the Secretary ceased protecting their interests "on April 8, 2025 when the MSHA publicized its Notice to Stakeholders announcing its temporary pause." *Id.* at 16. Without diminishing the value of the Unions' crucial role in the safety and health of miners, such a generalized interest in enforcement is insufficient to establish associational standing.

This case is no different than *UMWA v. Zatezalo*, and the Unions' "individual members are no closer to the alleged harm than the UMWA [or the USW] is as an organization," *UMWA*, 2019 WL 5212953, at *3, because the Unions' individual members can no more base their standing on a generalized enforcement interest than the Unions themselves. This is

22

particularly true with respect to the United Steel Workers because the metal-nonmetal compliance date is a full year away: April 2026. As for the United Mine Workers, the Secretary's enforcement pause is a short, limited, four-month period. Moreover, neither of the Unions can rebut the presumption that the Secretary is continuing to represent the interests of the public. See discussion, *supra* pp. 10-14. Accordingly, the Unions do not have associational standing to intervene, and their motion should be denied.

## III.    Conclusion

The Unions' motion to intervene is untimely and should be denied. In addition, the Unions have not and cannot overcome the rebuttable presumption that the Secretary is adequately representing the general public interest in this case, and are therefore not entitled to intervene. Lastly, the Unions do not have sufficient standing to intervene in this case, either in their own right or on the basis of associational standing. For all of these reasons, the Court should deny the Unions' motion to intervene.

Respectfully submitted,

JONATHAN L. SNARE
Acting Solicitor of Labor

THOMAS A. PAIGE
Acting Associate Solicitor

s/ BRAD J. MANTEL
Counsel for Standards & Legal Advice
U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
200 Constitution Avenue NW
Suite N4420-N4430
Washington, DC 20210
(202) 693-9331

Attorneys for MSHA and the
Secretary of Labor

## Certificate of Compliance

This document complies with Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Equity using Microsoft Word.

This document complies with Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4,495 words.

Counsel also certifies that this motion has been scanned for viruses and is virus-free.

s/ Brad J. Mantel

## Certificate of Service

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on April 18, 2025, and registered users will be served via the CM/ECF system.

Keith Bradley
Peter S. Gould
Kayala Marie Mendez
Morgan Miller
Trevor Piouz Kehrer
Squire Patton Boggs, LLP

Aaron R. Gelb
Kathryn M. McMahon
Mark M. Trapp
Conn Maciel Carey, LLP

Kevin F. Fagan
Hill Pickens
United Mine Workers of America

David Jury
Keren Wheeler
United Steelworkers

Miranda Leppla
Kendall McPherson
American Thoracic Society

s/ Brad J. Mantel